UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80036-CV-RUIZ
MAGISTRATE JUDGE REID

FREDERICK T. JONES,

     Plaintiff

v.

DEPUTY ROBERT J. YAFFEY, et al.,

     Defendants

_____/

## REPORT OF MAGISTRATE JUDGE

This Cause is before the Court on Plaintiff's *pro se* civil rights Amended Complaint, filed pursuant to 42 U.S.C. § 1983. [ECF No. 9]. This case has been referred to the Undersigned for issuance of all preliminary orders and recommendations to the district court regarding dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Fla. Admin. Order 2019-02. [ECF No. 2].

Plaintiff brings this case against officers of the Martin County Sheriff's Office, Defendants Deputy Robert Yaffey ("Deputy Yaffey") and Sheriff William Snyder ("Sheriff Snyder"), in both their individual and official capacities. [ECF No. 9 at 2]. This cause of action arises from Deputy Yaffey's stop and search of Plaintiff's vehicle, allegedly on the basis of racial profiling, which resulted in Plaintiff's claims for false arrest and imprisonment. *See* [*id.*]. Construing Plaintiff's Amended Complaint liberally, *see Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), he brings claims against Deputy Yaffey for unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution, false imprisonment in violation of the Due Process Clause of the Fourteenth Amendment, false arrest and malicious prosecution in violation of the

Fourth Amendment, and selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* [*id.* at 8-18]. He also brings claims against Sheriff Snyder for supervisory liability and failure to train. *See* [*id.* at 3-4]. Because Plaintiff is proceeding *in forma pauperis* [ECF No. 5], his Amended Complaint must be screened pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007).

Accordingly, for the reasons set forth below, the Undersigned **RECOMMENDS** that Plaintiff's Amended Complaint [ECF No. 9] (1) **PROCEED** against Deputy Yaffey in his individual capacity, for malicious prosecution in violation of the Fourth Amendment and selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment; (2) be **DISMISSED** against Deputy Yaffey in his official capacity; and (3) be **DISMISSED** against Sheriff Snyder in his individual and official capacity.

## I. Summary of Plaintiff's Charges

On March 2, 2017, Plaintiff, an African American man, was arrested and booked in the Martin County Jail after his vehicle, which contained passenger Jonathan Sid Noelte a/k/a David Lee Pryce ("Noelte"), was stopped by Deputy Yaffey. [ECF No. 9 at 6 ¶ 19]. Subsequent to and in relation to the March 2, 2017 arrest, Plaintiff received citations for Learner's Driver License-Violation of Restriction in violation of Fla. Stat. § 322.1615, and unlawful speed in violation of Fla. Stat. § 316.183(2). [ECF Nos. 14-1; 9 at 29]. Court records indicate that these traffic infractions cases have a status of "Open." [ECF Nos. 13, 13-2, 13-314, 14-2, 14-3].

Further, Plaintiff was charged in state court criminal Case No. 17000230CFAXMX,[1] in Martin County, Florida with (Count 1)—Sale, Manufacture, Delivery, or Possession with intent to

---

[1] The court takes judicial notice of this state court docket and any other referenced state court dockets. *See* Fed. R. Evid. 201; *see also United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999) (finding the district court may take judicial notice of the records of inferior courts).

Sell, Manufacture, or Deliver Cocaine in violation of Fla. Stat. § 893.13(1a1); (Count 2)—Use of Possession of Drug Paraphernalia in violation of Fla. Stat. § 893.147(1); (Count 3)—Unlawful Taking or Molestation of Gopher Tortoise or Gopher Tortoise Burrows in violation of Fla. Stat. § 379.401(2a), and (Count 4)—Possession Cocaine in violation of Fla. Stat. § 893.13 (6a). [ECF No. 17]. Plaintiff was on conditional release when these events occurred. [ECF No. 9 at 4 ¶ 9]. As a result of his arrest, the Florida Commission on Offender Review ("FCOR") revoked his conditional release, and he was returned to prison. [*Id.*].

## II. Plaintiff's Factual Allegations (Account of Events)

According to Plaintiff, on March 2, 2017, Deputy Yaffey pulled him over, after looking directly into his vehicle as Deputy Yaffey passed him on a two-lane highway driving in the opposite direction. [ECF No. 9 at 4 ¶ 11]. Plaintiff knew from past experiences of being stereotyped that he was about to be pulled over. [*Id.*]. Deputy Yaffey immediately made a U-turn in the middle of the two-lane highway and raced after Plaintiff with flashing red and blue lights. [*Id.*]. Plaintiff was pulled over on "Little Club Way (County Line)" at 7:24 p.m. for allegedly speeding. [*Id.*]. However, a speeding ticket was not written until 11:49 p.m.[2] [*Id.*].

After Plaintiff was pulled over, and Deputy Yaffey approached, Plaintiff asked Deputy Yaffey, "Why did you stop me? Because I wasn't speeding, and everything is in order in my car? Why did you pull me over without lying?" [*Id.* at 5 ¶ 12]. Deputy Yaffey said nothing to Plaintiff because his attention was focused on searching Plaintiff's vehicle with a flashlight, without Plaintiff's consent. [*Id.*].

---

[2] Plaintiff contends that it should not have taken five hours for Deputy Yaffey to write a speeding ticket. [ECF No. 9 at 5 ¶ 12].

Further, when Deputy Yaffey approached Plaintiff's vehicle, he did not have a traffic citation for speeding in hand.[3] [*Id.*]. This prompted Plaintiff to state "so, that's why you pulled me over to search my car . . . without my consent, and it's the only damn reason you pulled me over in the first place. Because you saw a white man in [the passenger seat] and you're thinking drugs. I know the racist's routine." [*Id.*]. Deputy Yaffey finally stated, "You either let me search the car[,] or I'll have it towed. Your decision. Oh, by the way, you were speeding. 55 in a 35 mile per hour zone." [*Id.* ¶ 13]. Plaintiff then angrily replied, "You're not searching my car because I don't like your racist attitude! I cannot account for Mr. Noelte." [*Id.*]. Plaintiff contends that Deputy Yaffey never once said anything to Noelte. [*Id.*].

Next, Deputy Yaffey stated, "Back-up will be here in a minute. I'll remove you from the car and search it any ways. An inventory search because it'll be towed. Oh, yeah, alcohol on your breath and you have blood shot eyes."[4] [*Id.*]. Plaintiff replied, "If my eyes are red it's because I take eye drop[s]: Latanprost. The alcohol you smell is not o[n] me[,] but Mr. Noelte." [*Id.* ¶ 14]. Deputy Yaffey responded, "You're on probation. When I finish writing this affidavit, your probation officer is not going to be very happy." [*Id.* ¶ 15]. Plaintiff replied, stating, "Write it motherfuckin racist! It's going to come back and bite you in the ass! I promise you that, you fuckin racist son of a bitch!" [*Id.* at 6 ¶ 16].

Pursuant to the March 3, 2017 arrest affidavit provided Plaintiff, Deputy Yaffey indicated that there was an "open half full 16 ounce can of beer" in Plaintiff's vehicle. [*Id.* at 26]. Plaintiff alleges that Noelte admitted the beer was his, but no citation was written for Mr. Noelte for an

---

[3] Plaintiff references Exhibits B and C. [ECF No. 9 at 26-27, 29].

[4] Plaintiff references Exhibit B. [ECF No. 9 at 26-27].

open container.[5] [*Id*. at 5 n.1]. Plaintiff claims that Deputy Yaffey's statement regarding the purported smell of alcohol on his breath was false, and lead to a finding that he had violated his conditional release. [*Id*.].[6] In support, Plaintiff contends that even though Deputy Yaffey claimed to have smelled alcohol on his breath, he did not administer a breathalyzer nor a DUI test. [*Id*.].

After the conversation between Plaintiff and Deputy Yaffey ensued, back up arrived and Plaintiff was removed from his vehicle. [*Id*. at 6 ¶ 17]. As Plaintiff was being removed from his vehicle, he noted that Noelte's glass crack pipe was visible beneath the brake on his driver's side. [*Id*.]. Plaintiff immediately faced Noelte and stated, "Why the hell did you put that shit on my side?" [*Id*.]. Noelte said nothing in response. [*Id*.]. Plaintiff then exited the vehicle and was placed in handcuffs. [*Id*.]. Plaintiff perceived where things were headed and advised Deputy Yaffey, "If you find anything in my car it belongs to Mr. Noelte. Because I do not do drugs. You can piss-test me. Look, I'm 256 lbs. Look at [Mr. Noelte]. He's skinny as hell. I'm just giving him a ride home." [*Id*.].

Deputy Yaffey then "made a discriminating racial slur" as the glass pipe was being confiscated. [*Id*. ¶ 18]. The following conversation ensued:

| | |
|---|---|
| **Yaffey** | It's your[s] now. You black guys always selling white guys drugs in the community. |
| **Plaintiff:** | You're telling me that if you find drugs in my car and it's not mine, you're char[g]ing me with it even if [Mr. Noelte] put it there? All you have to do is take the piss-test and see who comes up dirty. I don't sell drugs or do any drugs, man. The glass pipe itself contains his fingerprints and saliva alone. You won't find mine. |
| **Yaffey:** | Possession of cocaine and possession of drug paraphernalia. |

---

[5] Review of the Martin County state court docket, criminal Case No. 1700392TRAXMX, indicates that a Citation was written for Noelte for an open container; however, this Citation was dismissed. [ECF Nos. 15, 15-1, 15-2].

[6] Plaintiff references Exhibit G. [ECF No. 9 at 40-41].

5

| **Plaintiff:** | So you're arresting me for [Mr. Noelte's] shit and letting him go free? |
| **Yaffey**: | Absolutely. |
| **Plaintiff:** | You are a racist! You take his word over mine. You set up an innocent man! |

[*Id*.].

Plaintiff's vehicle was then searched, and another deputy located an object in a small opening of the lower dashboard, which was conclusively identified as cocaine from a field test. [*Id*. at 26]. Plaintiff was taken to the Martin County Jail in Deputy Yaffey's patrol vehicle and booked on March 2, 2017. [*Id*. at 6 ¶ 19]. In the March 3, 2017 arrest affidavit written by Deputy Yaffey, which describes the events that occurred during the initial stop on March 2, 2017. [*Id*. at 26-27]. The arrest affidavit indicated that Plaintiff was arrested for Possession of Cocaine in violation of Fla. Stat. § 893.03(2a) and Possession of drug paraphernalia in violation of § Fla. Stat. 893.147(1a), which appears to be the basis for **Count 2**.  [ECF No. 9 at 24]; [ECF No. 7].

Deputy Yaffey also drafted an Incident Report with regard to the events on March 2, 2017, citing Plaintiff's offenses as "Possess/Use Drug Paraphernalia" in violation of Fla. Stat. § 893.147 and "Poss Cocaine/Possess C/S w/o Valid R," in violation of Fla. Stat. § 893.13(6a). [*Id*. at 56]. The reference to "Poss Cocaine/Possess C/S w/o Valid R," in violation of Fla. Stat. § 893.13(6a), appears to be the basis for **Count 4**, which apparently referred to the cocaine found in Plaintiff's vehicle. [ECF No. 9 at 26, 56]; [ECF No. 17] (emphasis added)

Deputy Yaffey then wrote a supplemental report, dated March 3, 2017, after finding ten grams of cocaine in the back of his patrol vehicle beneath the back seat, and noting that Plaintiff must have dropped this contraband during his transport to the county jail on March 2, 2017. [ECF No. 9 at 33]. This supplemental report presumably formed the basis for Plaintiff's charge of "Sale,

Manufacture, Delivery, or Possession with Intent to Sell, Manufacture, or Deliver Cocaine" in violation of Fla. Stat. § 893.13.1a1 (Count 1). [ECF No. 17-2]. Plaintiff claims that Deputy Yaffey backdated the supplemental report and that the drugs found in the patrol vehicle were not his. [ECF No. 9 at 6 ¶ 19].

On March 24, 2017, a warrant was issued by the State Court Judge on the Count 1 charge, commanding the Sheriff's office to arrest Plaintiff pursuant to a March 23, 2017 Direct File Information by State, on the Count 1 charge. [ECF Nos. 17-3, 17-4]. On March 28, 2017, Plaintiff was arrested. [ECF No. 9 at 31]. Subsequently, on March 29, 2017, a First Appearance Order was issued by the State Court Judge, finding probable cause for Count 1 as charged. [ECF No. 17-5]. On March 31, 2017, the state court "conducted a buccal swab for DNA on Plaintiff" for comparison of DNA on the drugs found in Deputy Yaffey's patrol vehicle to Plaintiff's DNA. [ECF No. 9 at 7 ¶ 21]; [ECF No. 17-7].

On April 1, 2017, according to Plaintiff, his girlfriend, Shannon Wallace, told Deputy Yaffey that he had acted in bad faith by charging the Plaintiff for Noelte's contraband, and not arresting Noelte. [ECF No. 9 at 7 ¶ 22]. Plaintiff claims that Shannon Wallace told Deputy Yaffey that Noelte had a warrant for his arrest. [*Id.*]. She also allegedly informed Deputy Yaffey that Noelte had used his dead brother's name, and that his real name was "David Lee Pryce." [*Id.*]. Plaintiff asserts that Deputy Yaffey "did not like the idea that he had been duped by a smooth talking criminal." [*Id.*]. Deputy Yaffey then arrested Noelte on the same day, April 1, 2017. [*Id.* at 58, 7 ¶ 22]. Plaintiff has provided an April 1, 2017 supplemental narrative written by Deputy Yaffey regarding Noelte's arrest. [*Id.* at 58].

According to Plaintiff, Noelte was then charged with the drugs found in Deputy Yaffey's patrol vehicle and was booked in the Martin County Jail for the same charges as Plaintiff. [*Id.*].

Plaintiff alleges that Deputy Yaffey back dated Noelte's probable cause affidavit to March 2, 2017, "knowing full well that he did not arrest Mr. Noelte on March 2, 2017." [*Id*. ¶ 23]. Plaintiff claims it was impossible for Mr. Noelte to have put drugs in Deputy Yaffey's patrol vehicle when Mr. Noelte was not arrested and placed in a patrol vehicle until April 1, 2017. [*Id*.]. However, there is no record of these alleged drug charges against Noelte in Martin County Circuit Court. The only records are as follows: (1) Jonathan Noelte a/k/a David Lee Pryce received a citation for an open container in Case No. 1700392TRAXMX, which was dismissed [ECF Nos. 15, 15-1, 15-2]; and (2) Pryce a/k/a Noelte was charged and entered a plea of Nolo Contendere to giving a false name during arrest in Case No. 17000923MMAXMX. [ECF Nos. 16, 16-1, 16-3].

On April 21, 2017, the State filed a No Information for Plaintiff's charge of Possession of Cocaine, presumably with respect to **Count 4**. [ECF No. 17-8]. Accordingly, the criminal court docket indicates that Count Four—Possession of Cocaine in violation of Fla. Sta. § 893.13(6a) was "Dropped/Abandoned/No Information." [ECF No. 17-8].

On June 20, 2017, it was revealed that Plaintiff's DNA profile did not match DNA found on the cocaine from Deputy Yaffey's patrol car (Count 1). [ECF No. 9 at 37]. Counts 1 and 2 were Nolle Prossed. [ECF Nos. 17, 17-9, 17-10]. Finally, on July 17, 2019, Plaintiff entered a plea of Nolo Contendere as to (Count 3)—Unlawful Taking or Molestation of Gopher Tortoise or Gopher Tortoise Burrows in violation of Fla. Stat. § 379.401(2a), and Judgment was entered. [ECF Nos. 17-9, 17-10]. However, Plaintiff claims that on July 19, 2017, in he was exonerated of all criminal charges and was declared innocent in court from DNA evidence. [ECF No. 9 at 8 ¶¶ 26-27]. On November 1, 2017, the FCOR revoked Plaintiff's conditional release. [ECF No. 9 at 40].

In summary, Plaintiff contends that he is a member of a protected class and that Deputy Yaffey violated his constitutional rights when he stopped his vehicle, without probable cause,

solely on the basis of Plaintiff's race. [ECF No. 9 at 8-9 ¶¶ 31-35]. Plaintiff claims that had he been a "White American he would not have been stopped and harassed, and if he had been[,] he would have only been issued a ticket and sent on his way . . . ." [*Id*. ¶ 34]. He claims that Deputy Yaffey's discriminatory conduct is evidenced by the officer's failure to charge Noelte for the drugs found in Plaintiff's vehicle. [*Id*. at 8-9 ¶ 31].

As for injuries, Plaintiff claims that he suffered "humiliation, mental anguish, loss of wages, loss of property, depression, family and friend, imprisonment in violation of his fundamental civil rights, loss of life[,] freedom[,] and emotional distress." [*Id*. at 16 ¶ 62]. Plaintiff also claims that "[h]ad it not been for Deputy Robert Yaffey's prejudiced, corruption[,] unlawful[,] and wrongful conduct[,] . . . he would not have . . . violated [his conditional release] or committed back to prison." [*Id*. at 4 ¶ 9]. He further asserts that he lost, including, but not limited to, his "entire wardrobe[,]" his employment, promotions, raises, a "gold Grand AM Pontiac[.]" [*Id*. at 17-18 ¶¶ 70-75]. Finally, as for relief sought, Plaintiff requests compensatory and punitive damages, and any further relief this Court deems proper and just. [*Id*. at 18-19 ¶¶ 83-85].

### III. Standard of Review

In order to state a claim for relief under 42 U.S.C § 1983, a plaintiff must show that they were "deprived of a federal right by a person acting under color of state law." *See Griffin v. City of Opa Locka,* 261 F. 3d 1295, 1303 (11th Cir. 2001). However, a court has the authority to dismiss a complaint for failure to state a claim upon relief which can be granted. 28 U.S.C. §§ 1915(3)(2)(b)(ii), 1915A; *see Wright v. Miranda,* 740 F. App'x 692, 694 (11th Cir. 2018). The court takes the allegations in plaintiff's complaint made as true. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

Under 28 U.S.C. § 1915(e), although a plaintiff may proceed *in forma pauperis,* a court is still able to dismiss a complaint for failure to state a claim. The same standard is used for failure to state a claim under Fed. R. Civ. P. 12(b)(6) as well as § 1915(e)(2)(B)(ii).Where the complaint fails to state a claim to relief that is plausible on its face," a court may dismiss the complaint for failure to state a claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

In order to "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*, 740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017)) (per curiam). Although, as stated before, a *pro se* pleading is liberally construed, it still must "suggest that there is some factual support for a claim." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Finally, under section 1915(e)(2)(B)(ii), courts must dismiss as frivolous claims that are "based on an indisputably meritless legal theory . . ." or "whose factual contentions are clearly baseless." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

### IV. Discussion

Plaintiff claims Deputy Yaffey committed the follow constitutional violations:

a)  An unconstitutional seizure pursuant to a traffic stop in violation of the Fourth Amendment;

b)  An unconstitutional search of Plaintiff's vehicle in violation of the Fourth Amendment;

c)  False Imprisonment in violation of the Due Process Clause of the Fourteenth Amendment and False arrest in violation of the Fourth Amendment;

d)  Malicious prosecution in violation of the Fourth Amendment; and,

e) Selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff also brings claims against Sheriff Snyder for failure to train and for supervisory liability. Finally, Plaintiff brings official capacity claims against both Deputy Yaffey and Sheriff Snyder.

1) Plaintiff's Claims against Deputy Yaffey (Individual Capacity)

a) *Fourth Amendment: Initial Seizure (Traffic Stop)*

Plaintiff challenges the initial stop by Deputy Yaffey under the Fourth Amendment and asserts that Deputy Yaffey "intentionally and falsely accused him of speeding." [ECF No. 9 at 15 ¶ 66]. "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks omitted). A traffic stop is considered a seizure subject to the protections of the Fourth Amendment. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). A traffic stop is constitutional if the officers have probable cause to believe that a traffic violation has occurred or reasonable suspicion that criminal activity is afoot. *Floyd v. City of Miami Beach*, 730 F. App'x 838, 841–42 (11th Cir. 2018) (citing *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008)). Probable cause is a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004).

In essence, Plaintiff claims that Deputy Yaffey conducted an initial traffic stop without probable cause or reasonable suspicion. [ECF No. 9 at 4-5 ¶¶ 11-13]. Deputy Yaffey's March 3, 2017 arrest affidavit states that Plaintiff was pulled over for speeding "55 miles per hour in a 35 mile per hour zone." [*Id.* at 26-27]. However, Plaintiff denies that he was speeding. [*Id.* at 5 ¶ 12].

Plaintiff notes that he was pulled over at 7:24 p.m. for allegedly speeding, but a speeding ticket was not written until 11:49 p.m. [ECF No. 9 at 4-5 ¶ 11]. Moreover, Plaintiff has attached a response from Mary Linhard, Public Records Custodian at the Martin County Sheriff's Office, which states, "In regards to your request I read the report and it states there was a clear and consistent Doppler tone at 55 MPH, However Deputy Yaffey no longer works here. There were no attachments with the report indicating a radar print-out." [*Id*. at 60].

Taking Plaintiff's allegations as true, Plaintiff was not speeding, and was instead stopped solely due to racial profiling. *See* [ECF No. 9 at 10 ¶ 38]. Accordingly, at this juncture, Plaintiff has sufficiently pled and may proceed on a claim of violation of his Fourth Amendment rights by an unlawful seizure with regard to the initial stop by Deputy Yaffey.

   b)   *Fourth Amendment: (Unreasonable Search of Plaintiff's Vehicle)*

Plaintiff asserts that he did not consent to the search of his vehicle [ECF No. 9 at 5 ¶¶ 12-13], and therefore, appears to contest the search of his vehicle under the Fourth Amendment. Plaintiff contends that when he was pulled over, Deputy Yaffey was focused on searching his vehicle with a flashlight, without his consent. [ECF No. 9 5 ¶ 12]. Deputy Yaffey then informed Plaintiff that he would remove him from the car and an inventory search would be conducted because Plaintiff had alcohol on his breath and blood shot eyes. [*Id*.]. Plaintiff informed Deputy Yaffey that the smell of alcohol came from Noelte, and that if his eyes were red it was because of eye drops he used for a medical condition. [*Id*. ¶ 14].

Nevertheless, Plaintiff was removed from the vehicle, and one of the officer's observed a glass crack pipe beneath Plaintiff's brake on the driver's side of the vehicle. [*Id*. at 25, 6 ¶ 17]. Plaintiff informed Deputy Yaffey that the glass crack pipe did not belong to him, and instead belonged to Noelte. [*Id*.]. This information was corroborated by the March 3, 2017 arrest affidavit

written by Deputy Yaffey. [*Id.* at 26]. Further, the arrest affidavit indicated that a search of the vehicle was conducted by Deputy Fritchie, who located an object in a small opening of the lower dashboard, which was conclusively identified as cocaine from a field test. [*Id.*].

"In most circumstances, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment." *Brown v. United States*, 219 F. App'x 917, 919 (11th Cir. 2007) (citing *United States v. Magluta,* 418 F.3d 1166, 1182 (11th Cir. 2005)). "There are, however, several exceptions to this rule, including the 'automobile exception,' which allows 'officers [to] search any container in an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime.'" *Id.* (quoting *Magluta*, 418 F.3d at 1182) (emphasis in original).

"Probable cause for a search exists when under the totality of the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quotations and citations omitted); *see also Petithomme v. Cnty. of Miami-Dade*, 511 F. App'x 966, 973 (11th Cir. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)); *Mahoney v. Owens*, 818 F. App'x 894, 899 (11th Cir. 2020) (finding plaintiff's failed to raise a genuine issue of material fact as to whether officer had arguable probable cause to search his car based on the suspected presence of marijuana). Accordingly, "[a]ny part of a car may be searched without a warrant if there is probable cause to believe that contraband or evidence of a crime will be found." *Spencer v. Pistorius*, 605 F. App'x 559, 565–66 (7th Cir. 2015) (citing *United States v. Ross*, 456 U.S. 798, 824 (1982)).

A second exception to the warrant requirement for a search is the "plain view" doctrine. "The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of

access to the object itself; and (2) the incriminating character of the item is immediately apparent." *Brown*, 219 F. App'x at 919 (quoting United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006)).

Here, it is unclear whether the glass crack pipe in Plaintiff's vehicle was seen directly after Plaintiff was arrested and placed in handcuffs, or whether Plaintiff was removed from the vehicle, the glass crack pipe was seen, and then Plaintiff was placed in handcuffs. Nevertheless, this observance of the glass crack pipe falls under the plain view doctrine because the glass crack pipe was observed while Deputy Fritchie was outside of the vehicle and it was immediately apparent that the glass crack pipe was drug paraphernalia. *See Brown*, 219 F. App'x at 919. Further, when taking into account Plaintiff's red eyes, the smell of alcohol, and Plaintiff's statement, "If you find anything in my car it belongs to Mr. Noelte" [ECF No. 9 at 6 ¶ 17], under the totality of these circumstances, there was a fair probability that Plaintiff's vehicle would contain evidence of a crime. *See Brown*, 219 F. App'x at 919. Accordingly, under the automobile exception, there was probable cause to believe that contraband would be concealed and found in any part of Plaintiff's vehicle, and the search of Plaintiff's vehicle was lawful under the Fourth Amendment. *See id*.

Finally, even if the initial stop was unlawful, "the exclusionary rule does not apply in a civil suit against police officers." *Floyd v. City of Miami Beach*, 730 F. App'x 838, 842 (11th Cir. 2018) (quoting *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016)). Exclusion of evidence found by officers on the basis that they had no legal right to search an area would, in effect, be an application of the exclusionary rule, and such an application is inappropriate. *See Wren v. Towe*, 130 F.3d 1154, 1158 (11th Cir. 1997).

Therefore, Plaintiff has failed to state a claim on which relief may be granted for violation of his Fourth Amendment rights with respect to the search of his vehicle.

c) *Fourth Amendment: False Arrest/False Imprisonment*

Plaintiff also brings a false arrest/false imprisonment claim, alleging that Deputy Yaffey "unlawfully and falsely arrested him for contraband that he knew belonged to Mr. Noelte without probable cause and due process of law." [ECF No. 9 at 11-12]. Liberally construed, Plaintiff appears to claim that he was falsely imprisoned, in violation of the Fourteenth Amendment, and that he was illegally detained, in violation of the Fourth Amendment. *See Allen v. Gooden,* 521 F. App'x 754, 756 (11th Cir. 2013).

A "claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguire*, 965 F.3d 1147, 1158 (11th Cir. 2020). "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Baysa v. Gualtieri*, 786 F. App'x 941, 944–45 (11th Cir. 2019) (quoting *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996)). In conjunction, "[a] § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (citing *Cannon v. Macon Cnty.,* 1 F.3d 1558, 1562–63 (11th Cir. 1993), *modified on other grounds*, 15 F.3d 1022 (1994)). "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." *Id*. (citing *Cannon,* 1 F.3d at 1562 n. 3).

"As under federal law, the existence of probable cause bars a claim under Florida law for false arrest and false imprisonment." *Pierre v. City of Miramar, Fla., Inc*., No. 12-CV-60682, 2012 WL 12895745, at *3 (S.D. Fla. Aug. 15, 2012) (citing *Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990)) (noting that, in Florida, the existence of probable cause disposes of, inter alia, state law claim for false arrest). "For probable cause to exist, … an arrest must be objectively

reasonable based on the totality of the circumstances." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). "Probable cause to arrest exists when 'law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" *Baysa*, 786 F. App'x at 944–45 (quoting *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)). There need not be "an actual showing of criminal activity, but 'only a probability or substantial chance of criminal activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). Overwhelmingly convincing evidence is also not required, "but only reasonably trustworthy information." *Id.* (quoting *Ortega*, 85 F.3d at 1525) (internal citations and quotations omitted). Further, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). It is enough that probable cause exists to arrest for any crime. *Baysa*, 786 F. App'x at 944–45.

Finally, as noted, even if a stop is unlawful, "the exclusionary rule does not apply in a civil suit against police officers." *Floyd*, 730 F. App'x at 842 (quoting *Black*, 811 F.3d at 1268. Therefore, even if Deputy Yaffey's initial stop of Plaintiff's vehicle violated the Fourth Amendment, the fruits of the search—the drugs and drug paraphernalia—can still be considered to determine whether Deputy Yaffey had probable cause to arrest Plaintiff. *See Rance v. Bradshaw*, No. 15-CV-81210-KAM, 2016 WL 3199002, at *7 (S.D. Fla. June 9, 2016). Accordingly, Deputy Yaffey can rely on evidence found in Plaintiff's vehicle to prove that the arrest was supported by probable cause. *See Black*, 811 F.3d at 1268.

Deputy Yaffey's March 3, 2017 arrest affidavit indicates that Plaintiff was arrested on March 2, 2017, for Possession of Cocaine in violation of Fla. Stat. § 893.03(2a) and Possession of

drug paraphernalia in violation of Fla. Stat. § 893.147(1a). [ECF No. 9 at 24, 26-27]. Plaintiff was also cited with a learner permit restriction as well as a citation for excessive speed. [*Id*. at 27].

Fla. Stat. 893.03(2)(a), titled "Standards and schedules," provides a list of Schedule II controlled substances, which includes, in relevant part, "cocaine." Fla. Stat. § 893.147(1)(a), titled "Use or Possession of Drug Paraphernalia," provides that: "It is unlawful for any person to use, or to possess with intent to use drug paraphernalia: (a) To plant, propagate, cultivate, grow, harvest, manufacture, compound, covert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal a controlled substance in violation of this chapter . . . ."

Here, Deputy Yaffey had probable cause to believe that Plaintiff violated both Florida Statutes for which he was charged in the March 3, 2017 arrest affidavit. Plaintiff does not dispute, as indicated in the March 3, 2017 probable cause affidavit, that Deputy Yaffey observed a small amount of chore boy, commonly used as drug paraphernalia, in the center console of Plaintiff's vehicle, and that upon Deputy Yaffey returning from running Plaintiff's personal information, the chore boy was gone. [ECF No. 9 at 26]. Further, Plaintiff asserts that as he "was being removed from his vehicle[,] he noted that Mr. Noelte's glass crack pipe was visible beneath his brake . . . ." [*Id*. at 6 ¶ 17].

Plaintiff also does not dispute that a search of the vehicle was conducted, and crack cocaine was found in the lower dashboard to the left of the steering wheel, which a field test identified as cocaine. [*Id*. at 26]. Accordingly, there was probable cause to arrest Plaintiff, because the above facts and circumstances within Deputy Yaffey's knowledge were sufficient to warrant a reasonable belief that Plaintiff had committed the crimes as set forth in the March 3, 2017 arrest affidavit. *See Baysa*, 786 F. App'x at 944–45.

Although Plaintiff denied that the drug paraphernalia and the drugs belonged to him, [ECF No. 9 at 6 ¶ 18], and the March 3, 2017, probable cause affidavit does state that Plaintiff "advised that Noelte must have thrown the [crack rock and stem in the driver side foot well of the vehicle] during the stop [*Id*. at 26], this does not negate probable cause for Plaintiff's arrest. "While it is well-established that 'an officer may not choose to ignore information that has been offered to him or her' or 'conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts,' it is equally well-established that a police officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Rance v. Bradshaw*, No. 15-CV-81210-KAM, 2016 WL 3199002, at \*7 (S.D. Fla. June 9, 2016) (quoting *Kingsland v. City of Miami*, 382 F.3d at 1220, 1229 (11th Cir. 2004)) (citation omitted). Accordingly, although Plaintiff contends he told Deputy Yaffey that the glass crack pipe beneath his brake was not his, based on the glass crack pipe being in Plaintiff's vicinity, Deputy Yaffey could have had a reasonable suspicion that the crack pipe did indeed belong to Plaintiff or Noelte.

In conjunction, although the charges in the March 3, 2017 affidavit were ultimately Nolle Prossed, that Plaintiff was subsequently acquitted or charges [were] dropped against [him] is of no consequence in determining the validity of the arrest itself." *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990); *see also Harvey v. City of Stuart*, No. 06-14111-CIV, 2006 WL 8433960, at \*6 (S.D. Fla. Aug. 9, 2006), *report and recommendation adopted*, No. 06-14111-CIV, 2007 WL 9754374 (S.D. Fla. Mar. 23, 2007), *aff'd*, 296 F. App'x 824 (11th Cir. 2008). Finally, while Plaintiff alleges that his race was a pretext for his March 2, 2017 arrest, this does not offset that the facts and circumstances within Deputy Yaffey's knowledge were sufficient to warrant a reasonable belief that Plaintiff had committed the crimes as set forth in the March 3, 2017 arrest affidavit. *See Baysa*, 786 F. App'x at 944–45.

Therefore, Plaintiff has failed to state a claim on which relief may be granted against Deputy Yaffey for false arrest in violation of the Fourth Amendment and false imprisonment in violation of the Due Process Clause of the Fourteenth Amendment.

d) *Fourth Amendment: Malicious Prosecution*

Plaintiff also challenges his arrest for the drugs found in Deputy Yaffey's patrol vehicle [ECF No. 9 at 12 ¶¶ 46-53] which appears to be the basis for (Count 1)—Sale, Manufacture, Delivery, or Possession with intent to Sell, Manufacture, or Deliver Cocaine in violation of Fla. Stat. § 893.13(1a1). [ECF No. 17]. Count 1 appears to stem from Deputy Yaffey's March 3, 2017 supplemental report. [ECF No. 9 at 33].

As noted, a "claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguire*, 965 F.3d 1147, 1158 (11th Cir. 2020). On the contrary, "a claim of malicious prosecution 'requires a seizure pursuant to legal process.'" *Spinnenweber v. Williams*, No. 19-14489, 2020 WL 5653196, at \*2 (11th Cir. Sept. 23, 2020) (quoting *Williams*, 965 F.3d at 1158). Plaintiff's claims with respect to his arrest for Count 1 fall within the purview of a cause of action for malicious prosecution because this arrest was pursuant to legal process, i.e., a warrant which was initiated as a direct result of the State's March 23, 2017 information. *See Williams*, 965 F.3d at 1158.

The Eleventh Circuit has clarified "a plaintiff's burden to prove 'a violation of [his] Fourth Amendment right to be free from unreasonable seizures.'" *Williams*, 965 F.3d at 1165 (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019)). "To meet this burden a plaintiff must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Id*. A plaintiff can prove that an arrest warrant was constitutionally infirm if he establishes that: (1) "the officer who applied for

19

the warrant should have known that his application failed to establish probable cause; or (2) "that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id*. (citations omitted). Regarding intentional or reckless misstatements or omission, the Court should "examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Spinnenweber*, 2020 WL 5653196, at *2 (quoting *Paez*, 915 F.3d at 1287) (citations omitted).

Here, concluding that the State's March 23, 2017 Information charging Plaintiff with Count 1, the March 24, 2017 Warrant, and Plaintiff's March 28, 2017 arrest all stem from Deputy Yaffey's March 3, 2017 supplemental report, Plaintiff has pleaded a plausible claim for malicious prosecution. Plaintiff asserts that Deputy Yaffey "back-dated the probable cause affidavit to March 3, 2017." [ECF No. 9 at 31, 7 at ¶ 20]. Further, Plaintiff asserts that on March 2, 2017, he was searched immediately prior to being placed in Deputy Yaffey's patrol vehicle and he was searched immediately after he was removed from the patrol vehicle, and no drugs were found. [*Id*. at 6-7 ¶¶ 19-20]. Plaintiff that the drugs found in Deputy Yaffey's patrol vehicle on March 3, 2017, were not his. [*Id*.]. In the March 3, 2017 supplemental report, Deputy Yaffey omitted that he searched Plaintiff prior to Plaintiff being placed in the patrol vehicle and omitted that he did not find any drugs on Plaintiff. [*Id*. at 33]. Probable cause would have been negated if this omitted information was included. *See Williams*, 965 F.3d at 1165 (citations omitted).

Moreover, the March 3, 2017 supplemental report appears to lack the necessary probable cause for the charge in Count 1. The March 3, 2017 supplemental report directly notes that on March 2, 2017, Deputy Yaffey searched his patrol vehicle immediately after Plaintiff was removed, and Deputy Yaffey "did not observe anything on the floor seats or inside the seatbelt

pass through in the seat." [*Id*. at 33]. It was not until the next day, March 3, 2017, that Deputy Yaffey finally searched his patrol vehicle, removed the bottom seat cushion, and found cocaine and hydromporphone. [*Id*.].

Deputy Yaffey also stated, "It should be noted I did not actually remove the rear seat cushion prior to placing [Plaintiff] in the patrol vehicle but always check the rear passenger compartment at the start of my shift and before anyone is placed inside" [*Id*.]. The supplemental report also stated, "Based on the above listed information the narcotics found under the rear seat cushion likely were in the possession of [Plaintiff] prior to his transport to county jail, however without the actual removal of the seat prior and after every transport it [cannot] be proven." [*Id*.].

Taking Plaintiff's allegations as true, the March 23, 2017 Information, the March 24, 2017 Warrant, and the March 28, 2017 arrest affidavit, were based on omitted statements or insufficient probable cause. *See Williams*, 965 F.3d at 1165.

More importantly, Deputy Yaffey's March 3, 2017 supplemental report indicates that he found "[a] total of 40 small baggies . . . inside [a] larger bag. 38 of which contained cocaine 1 which contained a single 8mg Hydromorphone and a single small bag with cocaine residue inside." [ECF No. 9 at 33]. Exhibit #003 ("One sealed plastic bag containing a bag of suspected cocaine & hydromorphone") was submitted for DNA testing and found to be inconclusive with Plaintiff's DNA. [*Id*. at 37]. Accordingly, Count 1 was ultimately Nolle Prossed, presumably because Plaintiff's DNA did not match the DNA on the drugs found in Deputy Yaffey's patrol vehicle. *See* [ECF No. 17].

Finally, Plaintiff asserts that Deputy Yaffey stated "[y]ou black guys always selling white guys drugs in the community." [ECF No. 9 at 6 ¶ 18]. In essence, Plaintiff contends that his race

was the sole motivating factor for the Count 1 drug charge and the different treatment that Noelte, a white man traveling in the same car, received.

Therefore, at this juncture, Plaintiff has pleaded a facially plausible claim for malicious prosecution against Deputy Yaffey.[7]

 e) *Fourteenth Amendment: Selective Enforcement*

Plaintiff also brings a cause of action for "Racial Profiling." [ECF No. 9 at 8-11 ¶¶ 28-41]. Construing, Plaintiff's allegations liberally, he brings a claim for selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment based upon the different treatment he received from his white passenger.

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). "[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause." *Id.* "Claims of racially selective law enforcement 'draw on ordinary equal protection standards.'" *Stout v. Vincent*, 717 F. App'x 468, 471–72 (5th Cir. 2018) (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)) (internal quotation marks omitted); *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).

"To state a claim of racial discrimination under the Equal Protection Clause and section 1983, [a] plaintiff must allege and prove that [he] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory

---

[7] To the extent Plaintiff attempts to bring a malicious prosecution claim for Counts 2, 3, or 4, Plaintiff has failed to plead a plausible claim. As indicated previously in this Report, these Counts appear to stem from the drugs, drug paraphernalia, and endangered tortoise found in Plaintiff's vehicle. As discussed, probable cause was established for these Counts as drug paraphernalia, drugs, and an endangered tortoise were all found in Plaintiff's vehicle. *See* Because it appears that (1) Plaintiff does not contest that these items were found in his vehicle (2) Deputy Yaffey included in the arrest affidavit, and therefore, did not omit that Plaintiff stated the drugs belonged to Mr. Noelte; and (3) there was probable cause initially to charge Plaintiff with Counts 2, 3, and 4, Plaintiff has failed to plead a malicious prosecution claim with respect to these Counts.

intent." *Id.* (quoting *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) (quoting *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004)) (internal quotation marks omitted). More specifically, "[t]o prevail on a selective enforcement claim, [a] plaintiff must present evidence that individuals of a different race could have been subjected to a search of their premises and/or arrested for the same crime, but were not." *Hill v. Lee Cnty. Sheriff's Office*, No. 2:11-CV-242-FTM-29, 2012 WL 4356818, at *9 (M.D. Fla. Sept. 24, 2012) (citing *Swint v. City of Wadley, Ala.,* 51 F.3d 988, 1000 (11th Cir. 1995)).

"Finally, because the Equal Protection Clause is interpreted to provide protection from constitutionally unequal treatment independent of the Fourth Amendment's protection against unreasonable searches and seizures, the existence of probable cause to search and arrest does not necessarily dispose of a Fourteenth Amendment selective enforcement equal protection claim." *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1417–18 (S.D. Fla. 2014) (citing *Wayte v. United States,* 470 U.S. 598, 607 (1985)); *see also United States v. Scopo,* 19 F.3d 777, 786 (2d Cir. 1994) (Newman, C.J., concurring) ("Though the Fourth Amendment permits a pretext arrest, if otherwise supported by probable cause, the Equal Protection Clause still imposes restraint on impermissibly class-based discriminations.").

Here, Plaintiff has pleaded a plausible selective enforcement claim against Deputy Yaffey. Plaintiff asserts that because Deputy Yaffey saw a black and white male together, he automatically assumed there would be drugs. [ECF No. 9 at 4-5 ¶ 11]. Although drugs were ultimately found in Plaintiff's vehicle, this does not negate that Deputy Yaffey could have stopped Plaintiff solely on the basis of race. *See Lozman*, 39 F. Supp. 3d at 1417–18.

Second, Plaintiff references discriminatory remarks made by Deputy Yaffey. In fact, with regard to the glass crack pipe found in Plaintiff's vehicle, Deputy Yaffey stated, "It's your[s] now.

You black guys always selling white guys drugs in the community." [ECF No. 9 at 6 ¶ 18]. Deputy Yaffey also stated, You're on probation. When I finish writing this affidavit, your probation officer is not going to be very happy." [*Id*. at 5 ¶ 15]. Fourth, the Court finds that Plaintiff has pleaded a plausible malicious prosecution claim against Deputy Yaffey for the drugs found in the back of Deputy Yaffey's patrol vehicle, and Plaintiff claims that this malicious prosecution, was at least in part, on the basis of his race. [*Id*. at 13-14 ¶ 59].

Finally, Plaintiff contends that "if he had been White American[,] he would not have been stopped and harassed, and if he had been[,] he would have just been issued a ticket and sent on his merry way without the thought of his vehicle being searched for drugs or guns." [*Id*. ¶ 34]. Plaintiff also claims that Deputy Yaffey let "Mr. Noelte go scot free without arresting him as he so much done to Plaintiff [sic]." [*Id*. at 9 ¶ 35(c)].

Based on Plaintiff's allegations, he has shown that Noelte could have been arrested for the same crime as him, i.e., the drugs in his vehicle, but was not. *See Hill,* 2012 WL 4356818, at *9. Both were traveling in a car in which the offending items were easily visible. However, as indicated, Noelte was only convicted of giving a false name, and Plaintiff was the only defendant charged with the drug and drug paraphernalia offenses.

Accordingly, based on Plaintiff's allegations, the exhibits provided, and state court records, Plaintiff has adequately shown that Deputy Yaffey treated Plaintiff differently than Noelte, and that this unequal treatment stemmed from a discriminatory intent. *See Stout*, 717 F. App'x at 471–72.

Therefore, at this juncture, Plaintiff has pleaded a facially plausible claim for selective enforcement against Deputy Yaffey.

2) Plaintiff's Claims against Deputy Sheriff Snyder (Individual Capacity)

As for Sheriff Snyder, Plaintiff claims that he is responsible for Deputy Yaffey's "bad faith" wrongful acts by failing to supervise and properly train him as a law enforcement officer to "abide and obey all applicable laws, ordinances, and rules enacted or established pursuant to legal authority and the [C]onstitution . . . . [ECF No. 9 at 3 ¶ 1]. Plaintiff also alleges that Sheriff Snyder "failed to properly supervise and enforce the rules of ethical standard of conduct with Deputy Yaffey because had he done so, he would not have committed these gross and egregious wrongful acts against Plaintiff." [*Id*. ¶ 3].

a) *Vicarious Liability & Supervisory Liability*

It appears that Plaintiff is attempting to bring claims against Sheriff Snyder under a theory of supervisory liability. However, "[s]upervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability." *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Doe v. Sch. Bd. of Broward Cnty, Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 2006)). Supervisory liability only occurs either when (1) the supervisory official personally participates in the alleged unconstitutional conduct; or (2) when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff's claims against Sheriff Snyder are vague and conclusory and Plaintiff has failed to establish that there was a causal connection between the actions of Deputy Yaffey and Sheriff Snyder. Plaintiff's claims against Sheriff Snyder is actually based solely on a theory of vicarious liability. Because vicarious liability is not a basis for liability under § 1983, Plaintiff has failed to plead a plausible claim for any constitutional violations against Sheriff Snyder. *Rance v.*

25

*Bradshaw*, No. 15-CV-81210-KAM, 2016 WL 3199002, at \*10 (S.D. Fla. June 9, 2016) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692–95 (1978)).

    b)  *Failure to Train*

      Plaintiff alleging that Sheriff Snyder failed to adequately train or supervise Deputy Yaffey—implicates a different, albeit very similar, rule: "under § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)) (alteration in original). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious, ... such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, ... and when the failure to train is likely to result in the violation of a constitutional right." *McDaniel v. Yearwood*, No. 2:11-CV-00165-RWS, 2012 WL 526078, at \*16 (N.D. Ga. Feb. 16, 2012) (quoting *Belcher v. City of Foley,* 30 F.3d 1390, 1397–98 (11th Cir. 1994)).

      "Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Keith,* 749 F.3d at 1052 (quoting *Connick v. Thompson,* 563 U.S. 51, 61 (2011)).

      Here, to the extent Plaintiff brings a failure to train claim against Sheriff Snyder, his allegations are once again vague and conclusory. Plaintiff has failed to plead any allegations which show that Sheriff Snyder had actual or constructive notice of Deputy Yaffey's conduct or that a particular omission in his training program led to the deprivation of Plaintiff's constitutional rights.

Therefore, Plaintiff has failed to plead a plausible claim against Sheriff Snyder for failure to train.

3) Official Capacity Claims

To the extent that Plaintiff seeks to sue each Defendant in their official capacity, his claims are subject to dismissal under § 1915(e). Plaintiff has failed to provide any allegations to support his official capacity claims against Defendants. Under *Monell*, a plaintiff can only pursue official capacity claims if there was an unofficial policy or custom that caused a constitutional violation. *See Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1255 (11th Cir. 2018) (citing *Monell*, 436 U.S. at 690-91). Because Plaintiff has failed to show that Defendants had a custom or policy that caused a constitutional violation, he fails to state a claim upon which relief may be granted against Defendants in their official capacity.

## V.  Punitive Damages

Here, Plaintiff seeks Punitive damages punitive damages against all Defendants. [ECF No. 9 at 18 ¶ 86]. Punitive damages may be awarded under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983).

"While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award, ... its intent standard, at a minimum, required recklessness in its subjective form." *Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999). *Smith* refers to a "subjective consciousness" of a risk of injury or illegality and a "criminal indifference to civil obligations." *Id*. (quoting *Smith*, 461 U.S. at 37 n.6).

At this early juncture, since it cannot be determined whether punitive damages should be awarded against Defendant Deputy Yaffey arising from the facts alleged, the punitive damage claim should proceed against this Defendant.

## VI. Recommendations

Accordingly, based on the foregoing, it is **RECOMMENDED** that Plaintiff's Amended Complaint [ECF No. 9] (1) **PROCEED** against Deputy Yaffey, in his individual capacity, for malicious prosecution in violation of the Fourth Amendment and selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment; (2) be **DISMISSED** against Deputy Yaffey in his official capacity; and (3) be **DISMISSED** against Sheriff Snyder in his individual and official capacity.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** this 10th day of December, 2020.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **Frederick Jones**
      601333
      North Florida Reception Medical Center
      P.O. Box 628
      Lake Butler, FL
      PRO SE