UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-80036-RAR

**FREDERICK T. JONES**,

     Plaintiff,

v.

**ROBERT J. YAFFEY**, *and*
**WILLIAM SNYDER**,

     Defendants.

_____/

**ORDER ADOPTING IN PART AND REJECTING IN PART
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court upon a United States Magistrate Judge's Report and

Recommendation [ECF No. 18] ("Report"), which screened a *pro se* civil rights Amended

Complaint [ECF No. 9] ("Am. Compl.") filed by Plaintiff Frederick T. Jones.  In her well-reasoned

Report, the Magistrate Judge recommends that three claims proceed, and all other claims be

dismissed.  *See* Report at 2, 12, 22, 24, 28.[1]  Specifically, the Report advises the Court to permit

the following claims to proceed against Deputy Yaffey in his individual capacity: a Fourth

Amendment claim due to an unreasonable traffic stop seizure; a malicious prosecution claim; and

a selective enforcement claim.  *See id.*

     Disagreeing with the Report's conclusions, Plaintiff timely filed objections to certain

portions of the Report.  *See* Plaintiff's Objections [ECF No. 26] ("Objections").  Having carefully

reviewed the Report, the Objections, the record, and governing law, it is hereby

---

[1]  In its conclusion, the Report omitted the Magistrate Judge's previous finding that Plaintiff's Fourth
Amendment claim related to Plaintiff's initial seizure (*i.e.*, a traffic stop) should proceed.  *Compare* Report
at 12, *with id.* at 28.

**ORDERED AND ADJUDGED** that the Report is **ADOPTED** in part and **REJECTED** in part pursuant to the modifications and supplemental information included herein.

## FACTUAL ALLEGATIONS

In his Amended Complaint, Plaintiff alleges that Deputy Yaffey "erroneously and unlawfully" pulled Plaintiff over after they passed one another on a two-lane highway at night. *See* Am. Compl. at 4. Plaintiff avers that Deputy Yaffey "immediately made a U-turn" and "raced after Plaintiff" upon seeing Plaintiff "to search his vehicle because [Deputy Yaffey] saw" a white male passenger, Mr. Jonathan Sid Noelte ("Mr. Noelte") in the passenger seat. *Id.* at 4–5.

Upon being approached by Deputy Yaffey, Plaintiff asked, "Why did you stop me? Because I wasn't speeding, and everything is in order on my car? Why did you pull me over without lying?" *Id.* at 5 (errors in original). Deputy Yaffey "said nothing" and began using his flashlight to illuminate the interior of Plaintiff's vehicle. *Id.* Plaintiff asserts law enforcement pulled him over twice that day—once at 7:24 P.M. and another time, which is the incident at issue here, at 11:49 P.M.—and adds that it "d[oes] not take five (5) hours to write a citation." *Id.* at 4–5. Plaintiff began accusing Deputy Yaffey of implementing "the racist's routine" and searching his vehicle without his consent only because Plaintiff, who is African-American, had a white passenger in his vehicle. *Id.* Deputy Yaffey reportedly exclaimed, "You either let me search the car or I'll have it towed. Your decision. Oh, by the way, you were speeding. 55 in a 35 mile per hour zone." *Id.* at 5.

"[A]ngrily," as Plaintiff concedes, Plaintiff told Deputy Yaffey, "you're not searching my car because I don't like your racist attitude! I cannot account for Mr. Noelte." *Id.* Deputy Yaffey never spoke to Mr. Noelte, according to Plaintiff. *Id.* Likewise, there is no indication in Plaintiff's hand-written allegations that Mr. Noelte spoke to Deputy Yaffey. *See generally id.* Deputy Yaffey

stated, "Back-up will be here in a minute. I'll remove you from the car and search it any ways (sic)." *Id.* Deputy Yaffey also told Plaintiff that his breath smelled of alcohol and that he had "blood shot (sic) eyes." *Id.* Plaintiff, attempting to explain the situation, told Deputy Yaffey, "If my eyes are red it's because I take eye drop[s]: Latanprost. The alcohol you smell is not of me but Mr. Noelte." *Id.* Further, Plaintiff was on probation, and Deputy Yaffey knew it. *See id.* ("Defendant Yaffey then stated, 'You're on probation. When I finish writing this affidavit, your probation officer is not going to be very happy.'").

Once back-up arrived on the scene, law enforcement removed Plaintiff from his vehicle. *Id.* at 6. At that point, Plaintiff saw a glass crack pipe beneath the brake of his vehicle and accused Mr. Noelte of putting it on his side of the vehicle. *Id.* Mr. Noelte did not respond. *Id.* Plaintiff told Deputy Yaffey, "if you find anything in my car[,] it belongs to Mr. Noelte. Because I do not do drugs. You can piss-test me. Look, I'm 256 lbs. Look at him. He's skinny as hell. I'm just giving him a ride home." *Id.*

Deputy Yaffey reportedly "made a discriminating racial slur" and exclaimed "black guys [are] always getting white guys drugs in the community." *Id.* When Deputy Yaffey confirmed that Plaintiff would be arrested for possession of cocaine and possession of drug paraphernalia, Plaintiff accused Deputy Yaffey of being a "racist" intent on framing "an innocent man" because "[t]he glass pipe itself contain[ed] [Mr. Noelte's] fingerprints and saliva" and a simple "piss-test" would resolve which of the two men "c[ame] up dirty." *Id.*

Plaintiff, however, appears to have overlooked that Deputy Yaffey's arrest affidavit, which he attached to his Amended Complaint and incorporated within his allegations, contains sworn attestations that Plaintiff never addressed in his hand-written factual allegations. *See id.* at 26. For instance, Deputy Yaffey's affidavit reads that his "radar unit had a clear and persistent Doppler

tone and read a speed of 56 miles per hour" when Plaintiff's vehicle sped by him on the opposite side of the road. *Id.* The affidavit further explains that, *upon approaching the vehicle*, Deputy Yaffey saw that Plaintiff "had bloodshot eyes" and that he "could smell the odor of alcoholic beverages emanating from [Plaintiff's] breath." *Id.* (emphasis added). Importantly, Deputy Yaffey swore that he "observed a small amount of chore boy, commonly used as drug paraphernalia, [i]n the center cup holder of the vehicle." *Id.* He also observed "an open and half full 18 ounce can of beer." *Id.* Mr. Noelte "advised [Deputy Yaffey that the beer] belonged to him." *Id.*

Based on his initial interaction, according to Deputy Yaffey's affidavit, Deputy Yaffey asked Plaintiff for his driver's license, which Plaintiff reportedly claimed to have left at home. *Id.* Deputy Yaffey ran Plaintiff's personal information through a database. *Id.* As it turned out, Plaintiff had only a learner's permit, not an actual operator's license. *Id.* When Deputy Yaffey returned to the vehicle, "the Chore Boy was no longer where [he] had observed it." *Id.* (capitalization in original). Mr. Noelte, as Deputy Yaffey wrote in his affidavit, confirmed that he "never had a driver license (sic)." *Id.* A different deputy, not identified as a defendant in this action, "observed, [i]n plain sight, a glass stem, commonly used for crack cocaine in and around Jones's feet." *Id.* This other deputy searched the vehicle and found a white substance "[i]n the lower dashboard to the left of the steering wheel" driven by Plaintiff. *Id.*

Deputy Yaffey's affidavit corroborates Plaintiff's hand-written allegations that he accused Mr. Noelte of throwing the "crack rock and stem" onto his side of the vehicle. *Id.* "It should be noted," as Deputy Yaffey clarified in his affidavit, "that from the passenger seat the small opening [from where] the crack was recovered was not visible and blocked by the steering wheel." *Id.*

Thus, in his view, "[i]t would be impossible for [Mr.] Noelte to throw any type of substances into the opening from the passenger seat, especially without the knowledge of [Plaintiff]." *Id.*

One day later, Deputy Yaffey prepared an affidavit accusing Plaintiff of violating another drug-related crime after he found ten (10) grams of cocaine in the back of his patrol vehicle. *Id.* In his affidavit, Deputy Yaffey acknowledged that he searched Plaintiff before placing him into his patrol vehicle, averred that he searched the back of his patrol vehicle after removing Plaintiff, and found nothing both times. *Id.*

About one month later, Plaintiff's girlfriend reported that Mr. Noelte used a false name, specifically the name of his deceased brother, because there was a warrant for Mr. Noelte's arrest. *Id.* at 7. This tip led to Mr. Noelte's speedy arrest. *Id.* Defendant Yaffey, then, "back dated legal documents" in Mr. Noelte's case and asserted in the charges that Mr. Noelte committed the drug-related crimes that he previously attributed to Plaintiff. *Id.* Plaintiff claims he was exonerated of all the drug-related charges brought against him by virtue of DNA evidence. *Id.* at 8. And he further insists that Deputy Yaffey "knew" Plaintiff committed no criminal violations all along. *Id.*

## CLAIMS

The Report finds that Plaintiff has raised the following claims against Deputy Yaffey: (1) a Fourth Amendment challenge to the initial seizure; (2) a Fourth Amendment challenge to the search of Plaintiff's vehicle; (3) a Fourth Amendment False Arrest/False Imprisonment claim; (4) a Fourth Amendment Malicious Prosecution claim; and (5) a Fourteenth Amendment Selective Enforcement claim. *See* Report at 11–24. The Report also finds that Plaintiff has raised a failure to train claim against Sheriff Snyder. *See id.* at 25–27. Lastly, the Report concludes that Plaintiff has sued both Defendants in their official capacities and seeks punitive damages. *Id.* at 27–28.

## STANDARD OF REVIEW

When a magistrate judge's "disposition" has been properly objected to, district courts must review that disposition *de novo*.  Fed R. Civ. P. 72(b)(3).  But, when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72 advisory committee's notes (citation omitted). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress intended to require *de novo* review only where objections have been properly filed— and not when neither party objects.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

"A party filing objections must specifically identify those findings objected to and the specific basis for such objections."  *Hidalgo Corp. v. J. Kugel Designs, Inc.*, No. 05-20476, 2005 WL 8155948, at *1 (S.D. Fla. Sept. 21, 2005).  Therefore, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings."  *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## APPLICABLE LAW

A court may authorize a party to proceed *in forma pauperis* in any suit, or appeal thereof, so long as the party complies with the prescriptions of 28 U.S.C. § 1915(a)(1).  In such cases, however, the Court must perform a screening process and "shall dismiss [a] case *at any time*" if it determines that "the action or appeal . . . (i) is frivolous or malicious; (ii) fails to state a claim on

which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

## ANALYSIS

Before diving into the Report and Plaintiff's Objections, there is a fundamental issue with Plaintiff's Amended Complaint. The Magistrate Judge previously entered an Order to Amend. *See* Order to Amend [ECF No. 6]. In her Order to Amend, the Magistrate Judge warned Plaintiff that "failure to file [his] amended complaint on time *and in compliance* with this Court's orders" would probably result in "dismissal of this case." *Id.* at 9 (emphasis added). The Order to Amend clearly informed Plaintiff that shotgun pleadings are "impermissible" and, again, directed Plaintiff that he must "follow the directives and applicable rules articulated in [that] order." *Id.* at 7. A shotgun pleading, as the Order to Amend explained, comes in four rough categories. *See id.* at 5. "The most common type" of shotgun pleading—and the one pertinent here—"is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the

entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

As explained by the Eleventh Circuit, such a pleading deficiency generates the inherent problem present in all shotgun pleadings—namely, that "they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. Stated differently, shotgun pleadings do not comply with Fed. R. Civ. P. 8(a)(2) or 10(b). *Barmapov v. Amuial*, No. 19-12256, 2021 WL 359632, at *2 (11th Cir. Feb. 3, 2021). "[S]hotgun pleadings also 'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'" *Id.* (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018))

Here, the Magistrate Judge properly identified (and expertly examined) the claims that arguably could have been raised by a *pro se* litigant with similar allegations. And the Court will certainly address those claims one-by-one in an abundance of caution. But in the Court's view, Plaintiff's Amended Complaint should be dismissed as a shotgun pleading. For example, Claim One adopts all of the allegations contained in paragraphs 1 through 27. Am. Compl. at 8. And immediately after Plaintiff concludes briefing on Claim One in paragraph 36, Claim Two incorporates all of the allegations from paragraphs 1 through 36. *Id.* at 10. Plaintiff repeats this pattern on all subsequently listed claims. *See id.* at 11 (incorporating the previous 41 paragraphs); 12 (incorporating the previous 47 paragraphs); 13 (incorporating the previous 53 paragraphs); 14 (incorporating the previous 61 paragraphs).

By implementing this pleading strategy, it is unclear if there are other claims not explicitly enumerated or otherwise identified in the Report. Thus, the Amended Complaint clearly qualifies

under the "most common" category of shotgun pleadings—those where the allegations of each count not only adopt a general factual allegation section but also roll "into every successive count down the line" the allegations of prior counts.[2]  *See Weiland*, 792 F.3d at 1321, 1324.

The Court notes that Plaintiff's factual allegations are mostly straightforward.  But his legal contentions are not.  To illustrate, Claim One is labeled "Racial Profiling" and contends Deputy Yaffey violated the Due Process Clause because of his "racial profiling, harassment, false arrest, and imprisonment, prejudice, unlawful conduct[,] and discrimination."  Am. Compl. at 8.  Based on these legal contentions—which are conclusory—and on the allegations at issue, the Court could infer Claim One as being a Fourteenth Amendment selective enforcement claim *or* a Fourth Amendment false arrest and false imprisonment claim.  But the Magistrate Judge thought Plaintiff's false arrest and false imprisonment claim began on a different page.  *See* Report at 15 (citing Am. Compl. at 11–12).  And her interpretation of the Amended Complaint makes sense as well because the heading of that claim in the Amended Complaint explicitly reads "False Arrest and Imprisonment," and there is a clear invocation of said doctrine beneath the heading of that claim.  *See* Am. Compl. at 11–12.  Then again, on the following page and under a different claim, Plaintiff, again, has the heading "False Arrest" and again invokes the Fourth Amendment.  *See id.* at 12.  Because Plaintiff reincorporates every prior allegation and contention, it is practically impossible to readily determine the basis for each claim and—more importantly here—where each claim begins and ends.

---

[2]  To be clear, the Court does not maintain that a *pro se* complaint suffering from this technical pleading deficiency will always warrant dismissal.  In some cases, incorporating by reference a large amount of paragraphs may result in "each claim materially increase[ing] the burden of understanding the factual allegations underlying each [subsequent] count."  *See id.* at 1324.  In other words, some claims make more sense after prior claims have already been briefed.  And, in other cases, it is possible that breaking down the factual allegations with discrete subsections and titles, such as "Facts Surrounding the Shooting," might help steer a complaint away from shotgun territory.  *See id.* at 1325.  But this case is different.

Of course, "[a] *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017); *see also Torres v. Miami-Dade Cty.*, 734 F. App'x 688, 691 (11th Cir. 2018) ("Liberal construction, in more concrete terms, means that federal courts must sometimes look beyond the labels used in a *pro se* party's complaint and focus on the content and substance of the allegations."). That leniency, however, "does not give courts license to serve as de facto counsel or to rewrite an otherwise deficient pleading in order to sustain an action." *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011); *Golfin v. Sec'y, Fla. Dep't of Corr.*, 276 F. App'x 908, 908 (11th Cir. 2008) ("[W]e will not act as *de facto* counsel for a *pro se* litigant.").

Here, because the Amended Complaint intermittently interweaves the same claims at random points throughout each claim, and every successor count adopts the factual assertions and legal arguments of prior counts, the shotgun nature of Plaintiff's Amended Complaint makes it impracticable to liberally construe Plaintiff's allegations without stepping into the role of de facto counsel. This the Court cannot do. *See*, *e.g.*, *Watson v. Governor of Ga.*, 699 F. App'x 909, 909 (11th Cir. 2017) ("Although we construe *pro se* briefs liberally, we will not act as de facto counsel for litigants . . . ."); *Butler v. Broward Cty. Cent. Examining Bd.*, 367 F. App'x 991, 992 (11th Cir. 2010) ("[T]he district court had no duty to seek out and consider documents submitted in a previous civil rights lawsuit in order to determine whether Butler's complaint stated a claim pursuant to Rule 12(b)(6). Whether the documents in Butler's previous lawsuit established a claim or not, it is not the district court's role to act as Butler's *de facto* counsel and *sua sponte* seek out those documents in order to rewrite her pleadings.").[3]

---

[3] The Magistrate Judge took judicial notice of materials that were not attached to Plaintiff's Amended Complaint—but were part of Plaintiff's state court criminal record. The Court, however, declines to adopt such facts given that they are not explicitly alleged within the Amended Complaint. *See Butler*, 367 F. App'x at 992.

The Magistrate Judge, without question, exhibited her strong mastery of the facts in this case.  But this particular Amended Complaint cannot proceed because its shotgun nature would not only fail to provide fair notice to Defendants of the claims against them, but also devour the judicial resources of this Court (and later of the Eleventh Circuit if an appeal is to be taken by any party).  Accordingly, the Amended Complaint is **DISMISSED** as a shotgun pleading.

The Court shall, nevertheless, address the claims analyzed in the Report, as well as Plaintiff's Objections.  As explained below, upon doing so, the Court reaches the same conclusion: dismissal of the Amended Complaint is warranted.

### I.   *Objection to the Fourth Amendment claim regarding the initial seizure*

The Report finds that Plaintiff's allegations that he was not speeding are sufficient to allow his Fourth Amendment claim regarding the initial seizure to proceed.  *See* Report at 11–12.  Setting aside that the Court would dismiss the Amended Complaint as a shotgun pleading, the Court disagrees.  A traffic stop is constitutional if the officers have probable cause to believe that a traffic violation has occurred or a reasonable suspicion that criminal activity is afoot.  *See Floyd v. City of Miami Beach*, 730 F. App'x 838, 841–42 (11th Cir. 2018).

Here, Plaintiff avers that he was not speeding.  Am. Compl. at 4.  Noticeably absent from his Amended Complaint, however, is any allegation addressing the doppler that Deputy Yaffey documented as corroborating his estimation of Plaintiff driving 55 miles per hour in a 35 mile per hour zone.  *See generally* Am. Compl.; *see also* Am. Compl. at 26 (showing Deputy Yaffey's affidavit, which Plaintiff has relied on).  If Plaintiff's bare and conclusory allegation that he was "not speeding" were enough to construct a Fourth Amendment claim, every disgruntled driver claiming they were not speeding—despite the presence of official records to the contrary—would be able to sue their citing officer.  And here, the Amended Complaint contains no allegations

clarifying what the speed limit was or what speed Plaintiff was driving when he passed by Deputy Yaffey's patrol vehicle. In addition, Plaintiff does not provide any allegations as to how he might later establish a conclusion that he was not speeding. This is not to say that the stop was constitutional. Instead, this Court only finds that Plaintiff's allegations are too bare and conclusory to allow this claim to proceed. *See Iqbal*, 556 U.S. at 679.

Given that the Court cannot serve as de facto counsel—and Plaintiff's allegations are conclusory—this claim is **DISMISSED**. Accordingly, the Report is **REJECTED** with respect to this claim.

### II. *Objection to the Fourth Amendment claim regarding the search of Plaintiff's vehicle*

In his Amended Complaint, Plaintiff contends that Deputy Yaffey falsely "accus[ed] him of speeding in order to pull him over to search his car." Am. Compl. at 10. Plaintiff objects to the Magistrate Judge's recommendation that this Fourth Amendment claim be dismissed. *See* Objections at 2–7. More specifically, Plaintiff insists the Magistrate Judge overlooked facts showing that the "plain view" doctrine under the Fourth Amendment—relied upon in page 14 of the Report—does not apply. *See* Objections at 2.

But the Court need not resolve the applicability of the plain view doctrine. The Report, in the alternative, addressed the automobile exception to the Fourth Amendment's proscription against unreasonable searches and seizures. Report at 13–14. That exception, of course, permits law enforcement to search operational vehicles without a warrant if there is probable cause to believe that contraband or evidence of a crime will be found. *See United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006). Deputy Yaffey, as noted above, wrote that Plaintiff had bloodshot eyes and his vehicle had an odor of alcohol. *See* Am. Compl. at 26. He also documented

seeing drugs in a cup holder.  *Id.*  Observing a driver with bloodshot eyes and drugs in a cup holder is certainly enough to find probable cause to search the vehicle for additional drugs.

Nowhere in his Amended Complaint does Plaintiff allege that Deputy Yaffey could not smell alcohol from outside his vehicle or otherwise allege that seeing the color of his eyes was an impossibility under the circumstances.  *See generally* Am. Compl.  The Amended Complaint also does not address—let alone deny—the drugs Deputy Yaffey documented seeing in the cup holder. In fact, sworn under penalty of perjury, Plaintiff told Deputy Yaffey, "If my eyes are red it's because I take eye drop (sic): Latanprost.  The alcohol you smell is not of me but Mr. Noelte." Am. Compl. at 5, 21.  In addition, Plaintiff's defensive explanation for his eyes and the smell of his vehicle came *after* Deputy Yaffey had already commented as to his observations.  *See id.* at 5. Such an after-the-fact explanation could give a reasonable officer under the circumstances reason to doubt Plaintiff's protestations of innocence.  Lastly, although there are troubling allegations in this case suggesting a bias against African-Americans, Plaintiff has not constructed a plausible inference that Deputy Yaffey lacked probable cause to search his vehicle pursuant to the automobile exception.

Because Plaintiff never mentions—let alone challenges—the Report's reliance on the automobile exception in his Objections, the Report is subject to clear error review.  The Court finds no clear error and, therefore, **ADOPTS** the Report's reasoning and **OVERRULLES** Plaintiff's Objections regarding this claim.  This claim is therefore **DISMISSED**.

### III.   *Objection to False Arrest / False Imprisonment claim*

Plaintiff attacks the Magistrate Judge's conclusion that Plaintiff has failed to state a claim as to his false arrest and false imprisonment claims.  Objections at 7–8.  Liberally construed, Plaintiff asserts the Magistrate Judge (1) erroneously equated his "mere proximity" to drug

paraphernalia with probable cause and, in addition, suggests (2a) the Magistrate Judge overlooked that there was "no probable cause to stop Plaintiff" or (2b) "to search Plaintiff's vehicle as there was no immediately apparent 'plain view[.]'" *Id.* at 8.

"The Fourth Amendment permits warrantless arrests if made with probable cause." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). "A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (cleaned up). Importantly, "[t]he existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest." *Marx v. Gumbinner*, 905 F.2d 1503, 1505–06 (11th Cir. 1990).

To state a section 1983 claim for false imprisonment, a plaintiff must adequately allege the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of his due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The false imprisonment component requires a plaintiff to prove "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." *Id.* at 1526 n.2. If an officer has "sparse information" when they make an arrest, this provides grounds to find the officer "knew or should have known that the imprisonment" of that individual constituted an unlawful imprisonment. *Id.* at 1526.

Despite Plaintiff's averments that the Magistrate Judge conflated his "mere proximity" to drug paraphernalia with probable cause, Plaintiff has not addressed the inferences that law enforcement reasonably could have drawn under the circumstances. *See generally* Objections. When law enforcement encounters a driver with bloodshot eyes and the smell of alcohol emanating

from his car containing drugs in a cup holder; pronouncing that his "red eyes" are due to eye drops; exclaiming that the smell of alcohol in his vehicle emanates from a passenger, not him; insisting that a glass pipe found under the brake of his vehicle and drugs on the left side of his steering wheel—a vehicle he presumably has a possessory interest in—are not his; and overlooking that his passengers do not exhibit any manifestations of drug usage,[4] a prudent officer could reasonably believe that a crime related to the possession of those drugs or related paraphernalia was or was about to be committed by the driver.  This inference is particularly strong here because Plaintiff never alleged that Deputy Yaffey saw Mr. Noelte hide drugs on Plaintiff's side of the vehicle. Thus, the Magistrate Judge correctly found that probable cause to arrest Plaintiff existed on the scene, rendering the false arrest claim meritless.

As for Plaintiff's arguments that there was no probable cause to arrest him because the initial stop and subsequent search was illegal, this argument ignores the Magistrate Judge's cogent explanation that "even if Deputy Yaffey's initial stop of Plaintiff's vehicle violated the Fourth Amendment, the fruits of the search—the drugs and drug paraphernalia—can still be considered to determine whether Deputy Yaffey had probable cause to arrest Plaintiff" because "the exclusionary rule does not apply in a civil suit against police officers."  Report at 16 (cleaned up); *see also Black v. Wigington,* 811 F.3d 1259, 1267 (11th Cir. 2016) ("The Blacks argue that the evidence from their trailer could not provide probable cause because it was obtained during an illegal search, but [in so doing] they wrongly assume that the exclusionary rule applies in this civil case."); *Rance v. Bradshaw*, No. 15-CV-81210, 2016 WL 3199002, Opinion and Order at *7 (S.D. Fla. June 9, 2016) (relying on the fruits of an allegedly illegal stop and search to show probable cause existed at the time of an arrest because the exclusionary rule does not apply in civil

---

[4] Plaintiff has provided no allegations indicating that Mr. Noelte manifested symptoms that would have led an officer to believe he was under the influence of drugs.  *See generally* Am. Compl.

proceedings).  And, at any rate, Plaintiff has not set forth adequate allegations to establish a plausible inference that his initial stop was unconstitutional.

Plaintiff's view that a false arrest or false imprisonment transpired simply because the "accusations against him" were later proven false "by DNA," *see* Objections at 11, misses the mark.  While it is true that misidentification can form the basis of a false imprisonment claim for a detention following a valid arrest, *see Ortega*, 85 F.3d at 1526 (citing *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993), *opinion modified on reh'g on other grounds*, 15 F.3d 1022 (11th Cir. 1994)), that kind of "over-detention" would require Plaintiff to show Deputy Yaffey failed to release Plaintiff once he knew or should have known Plaintiff was entitled to release.  *See Alcocer v. Mills*, 906 F.3d 944, 954 (11th Cir. 2018) (internal citation omitted).  Here, Plaintiff provides no allegations as to when Deputy Yaffey should have known Plaintiff was innocent, rendering a misidentification theory for false imprisonment wholly inapplicable in this case.  And, based on the events at the scene, a reasonable officer would have had little evidence of Plaintiff's innocence for the reasons previously stated.

Plaintiff's Objections as to this claim are, therefore, **OVERRULED**.  Objections at 7–12.[5] Further, the Court **ADOPTS** the Report's compelling legal analysis in addition to the supplemental analysis contain herein.

---

[5] Even if Plaintiff [had] brought it to Deputy Yaffey's attention that Mr. Noelte's DNA and fingerprints [were] on the glass pipe," Objections at 12, Plaintiff has provided no allegations that would allow this Court to make the tremendous leap of logic necessary to infer that Deputy Yaffey could have relied on a suspect's on-the-scene forensics analysis as "trustworthy information" when evaluating whether probable cause to arrest that very suspect existed.  *See Williamson*, 65 F.3d at 158.  Put another way, regardless of whether Plaintiff was ultimately "exonerated by DNA," *see* Objections at 11, that was not a reasonable inference Deputy Yaffey could have drawn.  As previously stated, based on the documentary evidence relied upon by Plaintiff, it appears he misrepresented the fact that he only had a learner's permit for the vehicle he drove that night.  Thus, a reasonable and prudent officer would have likely become suspicious of Plaintiff's after-the-fact justifications for why his eyes were bloodshot red when drugs had already been spotted in his vehicle because, after all, Plaintiff had already demonstrated a propensity for stretching the facts.  More fundamentally, Plaintiff overlooks the fact that an officer can have probable cause to believe a crime is afoot and later be wrong.  *See Baysa v. Gualtieri*, 786 F. App'x 941, 944 (11th Cir. 2019) (explaining

## IV.    *Objections as to the Official Capacity claims*

Liberally construed, Plaintiff also objects to his official capacity claims not proceeding. Objections at 13.  The primary basis for his "objection" better resembles a call to action as opposed to an actual objection to a magistrate judge's report.  This is because Plaintiff asks the Court to allow his official capacity claims to proceed on the basis that it would "send[] a message to the Sheriff's office that we are not going to tolerate innocence people (sic) being framed outside the law (sic)."  Objections at 13.  Axiomatically, legal claims must be supported by factual allegations, not public policy initiatives—no matter how noble those initiatives might be.  *See generally Iqbal*, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (cleaned up)).  This particular "objection" is, therefore, **OVERRULED**.

Plaintiff, in the alternative, asserts that the Magistrate Judge erred by recommending that the official capacity claims be dismissed because the cases she cited in her Report are pertinent only to supervisory liability claims, not official capacity claims.  Objections at 14.  This assertion is simply incorrect.  *See* Report at 27 (citing *Walker v. City of Calhoun, GA*, 901 F.3d 1245, 1255 (11th Cir. 2018) and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  Because Plaintiff in no way refutes the Magistrate Judge's succinct and cogent reasoning regarding official capacity claims, *see* Report at 27 ("Because Plaintiff has failed to show that Defendants had a custom or policy that caused a constitutional violation, he fails to state a claim upon which relief may be granted against [any of the] Defendants in their official capacit[ies].."), Plaintiff's Objections

---

probable cause "does not require an actual showing of criminal activity" or even "overwhelmingly convincing evidence" of criminal activity) (cleaned up).

challenging the Magistrate Judge's resolution of his official capacity claims are **OVERRULLED**.[6]  The Court **ADOPTS** the Report's reasoning on this issue.

### V.  Plaintiff's Objection to the Failure to Train claim

Next, Plaintiff objects to the Magistrate Judge's analysis regarding a construed failure to train claim against Sheriff Snyder.  Objections at 15–20.  Plaintiff insists that Sheriff Snyder "is well aware of the discrimination against African-Americans displayed by his department" because he failed to adequately train his subordinates.  Objections at 20.  Even if that were true, Plaintiff has not pinpointed where in his Amended Complaint he has submitted reasonably specific allegations connected to Sheriff Snyder.  *See generally* Objections.  The Report found one "vague and conclusory" reference to Sheriff Snyder being allegedly responsible for "fail[ing] to properly supervise and enforce the rules of ethical standard of conduct with [respect to] Deputy Yaffey because had [Sheriff Snyder] done so, [Deputy Yaffey] would not have committed these gross and egregious wrongful acts against Plaintiff."   Report at 25–26 (quoting Am. Compl. at 3) (cleaned up).  The Court, in its review of the Amended Complaint, sees no other allegations implicating Sheriff Snyder.

Based on Plaintiff's allegations, the Report found any claims against Sheriff Snyder were "actually based solely on a theory of vicarious liability."  Report at 25.  Having reviewed the entirety of Plaintiff's allegations, the Court agrees.  Of course, "[s]upervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability."  *Belcher v.*

---

[6]  Plaintiff accuses the Magistrate Judge of purposefully "circumvent[ing]" his entitlement to sue Sheriff Snyder and Deputy Yaffey by "misstating the law" and for addressing his official capacity claims against all Defendants simultaneously.  *See* Objections at 13–14.  This Court—and, therefore, the Magistrate Judge—have the authority and the obligation to screen Plaintiff's Amended complaint for failure to state a claim.  *See* 28 U.S.C. §§ 1915(e) (articulating the standard for IFP litigants).  To the extent Plaintiff's baseless and conclusory accusations of bias could be interpreted as an objection, that objection is **OVERRULED**.

*City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994) (cleaned up).  "Supervisors can be held 'liable under . . . § 1983, for the unconstitutional acts of their subordinates if they personally participated in the allegedly unconstitutional conduct or if there is a causal connection between their actions . . . and the alleged constitutional deprivation." *Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (quoting *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008)).

To establish a causal connection, a plaintiff must show "(1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he failed to do so; (2) the supervisor's improper custom or policy led to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Hendrix*, 535 F. App'x at 805 (cleaned up).  Here, the Report found no allegations sufficient to establish a causal connection.  The Court agrees.  In addition, Plaintiff has not identified any allegations in his Objections that the Magistrate Judge might have overlooked. Thus, Plaintiff's Objections regarding this claim are **OVERRULED**, and the Magistrate Judge's analysis on this claim is **ADOPTED**.

### VI.  *Malicious Prosecution claim*

In her Report, the Magistrate Judge finds that Plaintiff has raised a claim of malicious prosecution against Deputy Yaffey with respect to the drugs found in Deputy Yaffey's patrol vehicle and recommends that this claim proceed.  Report at 19–22 (citing Am. Compl. at 8–11).

However, the Court finds that the portion of the Amended Complaint cited in the Report does not invoke a malicious prosecution claim with respect to the drugs found in Deputy Yaffey's vehicle—at least not definitively.  From what the Court can decipher, that section of the Amended Complaint relates to the drugs and related paraphernalia found in *Plaintiff's* vehicle, not Deputy

Yaffey's.  The Court's finding is in no way a criticism of the Magistrate Judge's thoughtful analysis—but simply evidences the incredibly shotgun nature of Plaintiff's pleading.  And the shotgun nature of the Amended Complaint, as previously mentioned, is all the more compounded by Plaintiff incorporating by reference every allegation and legal contention.

Because the Court does not find that Plaintiff has established a malicious prosecution claim, in part due to the shotgun nature of Plaintiff's pleading, the Court **REJECTS** the Report to the extent it finds a malicious prosecution claim related to the drugs found in Deputy Yaffey's patrol vehicle.  The Court shall now address whether Deputy Yaffey violated Plaintiff's Fourth Amendment rights because of his malicious prosecution with respect to the drugs and related paraphernalia found in Plaintiff's vehicle—the claim the Court *does* see in the Amended Complaint.

"To establish a federal claim for malicious prosecution under § 1983, a plaintiff must prove (1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures."  *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018).  Malicious prosecution claims arise under the Fourth Amendment and are viable constitutional torts under section 1983.  *Id.*  The first element is met if a plaintiff establishes the following: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  *Id.* (quoting *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008)) (internal citation omitted).

The Court has already found that Deputy Yaffey would have had probable cause based on Plaintiff's allegations and the documentary evidence he incorporated.  And, in her Report, the Magistrate Judge agreed that such a malicious prosecution claim challenging the drugs and related

paraphernalia in Plaintiff's vehicle would fail to state a claim. *See* Report at 22 n.7. Accordingly, the Court **DISMISSES** any malicious prosecution claim raised in this proceeding. The Court **ADOPTS** the Report to the extent it finds no malicious prosecution claim has been stated with respect to the drugs and related paraphernalia in Plaintiff's vehicle. *See* Report at 22 n.7. In addition, the Court **REJECTS** the Report to the extent it finds a malicious prosecution claim related to the drugs found in Deputy Yaffey's patrol vehicle for the reasons previously stated herein. *See Golfin*, 276 F. App'x at 908 ("[W]e will not act as *de facto* counsel for a *pro se* litigant.").

### VII. *Selective Enforcement claim*

The Magistrate Judge recommends that Plaintiff's selective enforcement claim proceed in this case. Report at 24. Pursuant to the Equal Protection Clause of the Fourteenth Amendment, "the Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). A selective enforcement claim requires a plaintiff to show "(1) he was treated differently from other *similarly situated* individuals, i.e. others outside of his group in similar situations were not prosecuted, and (2) he was singled out for different treatment because of his association with an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights." *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1418 (S.D. Fla. 2014) (emphasis added); *see also Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006) ("[D]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." (cleaned up)).

Here, the question is whether Plaintiff received dissimilar treatment from Mr. Noelte. *See generally Taylor v. Pekerol*, 760 F. App'x 647, 653–54 (11th Cir. 2019) (requiring plaintiff to show "similarly situated" individuals were not prosecuted and that "discriminatory animus was

behind the disparate treatment").  The Magistrate Judge constructed a strong argument as to why Plaintiff's selective enforcement claim should proceed, but the Court disagrees with her ultimate recommendation.  Many of the points she emphasized certainly bear on the question of bias—an element Plaintiff could establish at this stage with his assumed-as-true allegations.  But, to show a claim of racial discrimination under the Equal Protection Clause, there must also be a showing of "similarly situated individuals" who experienced disparate treatment and a showing that "discriminatory animus" is what motivated that variance in treatment.  *See Taylor*, 760 F. App'x 653–54.

The Court does not see Plaintiff and his passenger, Mr. Noelte, as "similarly situated individuals."  While the two men were in the *same* vehicle, the drugs and drug paraphernalia were found on Plaintiff's side of the vehicle—a vehicle he presumably owned.  Nowhere in his Amended Complaint does Plaintiff allege that Mr. Noelte had bloodshot eyes or manifested telltale signs of drug usage.  Viewed together, Plaintiff's possessory interest in the vehicle, bloodshot eyes, and proximity to the drugs provide enough factors to distinguish the two men from one another during the traffic stop.

Notably, implicit in Plaintiff's repeated assertions that his "mere proximity" to the drugs and drug paraphernalia should not have been enough to find probable cause to arrest him is a concession that there was even less probable cause to arrest Mr. Noelte based on his greater distance than Plaintiff from the drugs and drug paraphernalia because, after all, they were found on Plaintiff's side of the vehicle.   In other words, using Plaintiff's logic of "mere proximity" to drugs and drug paraphernalia, Plaintiff has inadvertently conceded that Mr. Noelte is not his comparator.

Thus, while the Court agrees with the Magistrate Judge that Deputy Yaffey exhibited a bias towards African-Americans based on Plaintiff's assumed-as-true allegations, Plaintiff's selective enforcement claim must be dismissed for failure to state a claim because Mr. Noelte was not a similarly situated comparator under the circumstances.  In sum, the Court **DISMISSES** this claim and **REJECTS** the Report to the extent Plaintiff meant to raise a selective enforcement claim under the Equal Protection Clause.

### VIII.  Plaintiff's Objections related to Punitive Damages

The Report recommends that the demand for punitive damages against Deputy Yaffey proceed and that it be dismissed against Sheriff Snyder.  Report at 27–28.  In essence, Plaintiff objects on the grounds that his ability to demand punitive damages against all Defendants should proceed.  Objections at 22.  Since the Court finds that Plaintiff has not stated a claim against any of the identified Defendants in this action, the Report is **REJECTED** on this issue and the Objections are **OVERRULED** as moot.  *See Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd., Inc.*, 615 F. App'x 533, 544 n.5 (11th Cir. 2015) (concluding a moot case makes any demand for punitive damages moot as well).

<u>CONCLUSION</u>

Having carefully reviewed the record and governing law, the Report is **ADOPTED** in part and **REJECTED** in part pursuant to the modifications and supplemental analysis stated herein. Plaintiff's Objections, which were reviewed *de novo*, are **OVERRULED**.  Accordingly, the Amended Complaint is hereby **DISMISSED** as an impermissible shotgun pleading and, in the alternative, **DISMISSED** for failure to state a claim.  All pending motions, if any, are **DENIED** as moot.  All deadlines are **TERMINATED**.  The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 23rd day of February, 2021.

_____
**RODOLFO A.  RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:      Frederick T. Jones
         638 6th Street
         West Palm Beach, FL 33401
         PRO SE